## Sampson W. Moon, Defendant, in Error, v. Charles E. Roberts, Plaintiff in Error.

## Gen. No. 16,337.

EVIDENCE—*when mechanical demonstration improper.* It is improper for the court to permit a mechanical demonstration, but such error is harmless where the cause is tried before the court without a jury.

Error to the Municipal Court of Chicago; the HON. ARNOLD HEAP, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed and judgment here. Opinion filed May 21, 1912.

WILLIAM SHERMAN HAY, for plaintiff in error.

DAVID JETZINGER and HOWARD E. LEACH, for defendant in error.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

Plaintiff in error, Charles E. Roberts, seeks a reversal of a judgment for $1313.67, entered against him December 18, 1910, in the Municipal Court of Chicago, in favor of defendant in error, Sampson W. Moon, for use of Charles Heddon. Though three separate suits had been brought, they were consolidated into the one in which the judgment was entered. The trial was had before the court, without a jury.

It appears from the record that the parties had business relations, under three separate written contracts

between them, dated February 25, 1907, July 17, 1907, and July 17, 1908, respectively, upon the last of which these suits were founded.

Moon was the inventor of an electric vibrator,—a machine for giving mechanical massage,—and Roberts was an extensive manufacturer of long experience and large means. It is evident from the contracts, all of which were offered in evidence, that Moon desired to avail himself of the capital and business experience which Roberts is shown to have possessed, and, on the other hand, that Roberts desired to secure an interest in the manufacture and sale of an electric vibrator. After the first contract between the parties had been carried out, the second was entered into, and, under it, Roberts assumed more control over the invention and business than was provided for in the first. During the period covered by the second contract, a large number of vibrators were manufactured in Roberts' shop, which were extensively advertised in pamphlets issued under the direction of Moon and an advertising agent for Roberts, in which it was claimed that the use of this particular vibrator would cure a long list of diseases and ailments. During the year it was found necessary to make many structural changes in the machine, among which were some to strengthen it, others to make it less noisy, and still others to lessen the cost of construction. During the entire period covered by the last contract, Moon was working in Roberts' shop, and Roberts, together with his son, Owen, who acted as manager of the business, and who was shown to be a skilled mechanical engineer, were there also practically every day. There is some controversy as to the extent to which the machine was deficient in operating, and as to some representations made concerning it by Moon.

Under the contract sued upon, Moon released Roberts from all liability for past royalties, and, in turn,

Roberts agreed that Moon should be retained as manager of the Vibrator Company for one year, from July 17, 1908, its date, at a salary of $50 per week, and, in addition, that he should receive $50 per month as an advance payment on license fees to become due to him in the future. This contract, like those which preceded it, is inartificially drawn and somewhat obscure, but we think that so much of it as we have stated, is clear. On March 6, 1909, Owen Roberts informed Moon that his father had decided to discontinue the business, and, accordingly, Moon was no longer employed by Roberts. Up to that time, pursuant to the contract, Moon's salary had been paid, and he had received various advances. From the statement of claims filed in the three suits, it appears that it is sought to recover for his salary at $50 per week from March 6, 1909, to July 16, 1909, and for $50 per month, as an advance payment on license fees to become due to him in the future, for the year beginning July 17, 1908, and ending July 16, 1909, less such deductions, if any, as were properly chargeable against these sums.

It appeared that, during the period covered by the contract, Moon had been paid in four separate items, sums aggregating $236.23, which was to be credited upon the amount of his claim, as was also $500, which by his own testimony, "was to apply on future royalties which should accrue after the expiration of the contract of 1908." Plaintiff in error complains that Moon's invention was not what it was represented to be, and that he was entitled to offset, against Moon's claim, the business losses he had sustained in trying to perfect the invention, which, he had been led to believe by Moon's statements to him, had already been perfected.

We have carefully gone over the evidence, which was submitted to the court below, and do not find that any such misrepresentations were made by Moon as justifies Roberts' claim of a set-off. It is urged by

plaintiff in error that the contracts were prepared by an attorney for Moon and executed by him (Roberts), without submitting them to his own attorney, and he complains that some of their features impose unjust conditions upon him; but there is no showing that justifies any intimation that Moon acted in bad faith with respect to these contracts, or that Roberts was overreached. On the contrary, his large business experience, and his high standing as a man and a manufacturer, clearly put him upon at least an equal footing with Moon, in entering into these contracts.

Plaintiff in error complains that the court below erred in not admitting the testimony of Dr. Eberhart, a witness called on behalf of the plaintiff in error, and also in permitting the defendant in error, Moon, at the time of the trial, to make a physical demonstration of the vibrating machine to the judge. We think the testimony of Dr. Eberhart was properly excluded, and while the demonstration made by defendant in error, Moon, was objectionable, yet, its admission, under the circumstances, was unimportant, and it did not constitute reversible error. The hearing was before a court without a jury, and even if the demonstration might have been harmful before a jury, we do not think it could have had any injurious effect upon the court.

The court below saw the witnesses and observed their manner of testifying, and we think the judgment is fully authorized by the testimony, except that it fails to credit plaintiff in error, Roberts, with the $500 advance to apply on royalties, which, according to the testimony of the plaintiff himself should accrue after the expiration of the contract sued upon. As no such royalties ever did accrue, the amount should be credited.

From the testimony it appears that plaintiff was entitled to recover upon the basis of nineteen weeks at $50 per week, and twelve months at $50 per month, making a total of $1,550, upon which should be cred-

ited the sums of $236.23 and $500, both shown by plaintiff's evidence. We have carefully examined the contract upon which suit is brought, and the testimony of the plaintiff, and are of the opinion that this deduction should be made. The judgment, therefore, should have been entered for $813.77. Because of the error indicated, the judgment of the court below will be reversed, and judgment entered here for $813.77. As no interest is allowed to defendant in error, the costs will follow the judgment against plaintiff in error.

*Judgment reversed and judgment here upon a finding for $813.77.*